Allen vs. Clark and another, impleaded.

ALLEN vs. CLARK and another, impleaded.

SALE OF LAND ON EXECUTION. (1) *Order vacating such a sale, affirmed.* (2) *Practice on such sales.* (3) *Condition of vacating order.*

1. A sale of real property on execution was vacated by the court below, on motion of the execution creditor, made before the time for redemption had expired, on the grounds that the execution was not indorsed by the plaintiff's attorney, nor any return thereon indorsed by the sheriff; that the plaintiff was not informed of the sale until long after it was made, and shortly before the motion to vacate it; and that the property was sold for a grossly inadequate consideration. This court affirms the vacating order.

2. Correct practice under our statute requires the execution to be indorsed by the party issuing it, or his attorney (R. S., ch. 134, sec. 8); and the lack of such indorsement, and of any return indorsed upon the writ by the officer, are irregularities; and where there was no cross motion, by the party interested in sustaining the sale, for an amendment of the writ, and it appeared that the ends of justice would be promoted by vacating the sale, there was no error in setting it aside for those irregularities.

3. The order was made on condition that plaintiff first pay into court the amount bid by the purchaser at such sale, with interest thereon from the date of the sale, and the costs and expenses of the sale. *Held,* as favorable to the purchaser as the law requires.

APPEAL from the Circuit Court for *Wood* County.

The appeal is from an order setting aside a sale of real property made upon an execution. The grounds on which the sale was vacated are briefly stated in the opinion. At the hearing in the circuit court, affidavits were read for the plaintiff, and

counter affidavits for *Clark* and *Scott*, the purchasers at the sale. These were of great length, and very conflicting. That of the plaintiff stated in substance, that he had previously recovered a judgment against Henry Reed, in the same court, for $4,287.12, which was still in full force, and which became a lien upon the real estate of Reed in said county; that when the judgment was rendered, such real estate was of sufficient value to pay the same; that afterwards an execution was issued and placed in the hands of the sheriff of Wood county, but it was not indorsed by the plaintiff's attorney, and had no return of the sheriff indorsed thereon; that there was on file in the office of the register of deeds of said county, what purported to be a certificate of sale, based, as the affiant supposed, upon said execution, which recited that a large amount of real estate had been sold for $200 to the appellants, and that they would be entitled to a deed on the 18th of May, 1873, which certificate bore date February 17, 1871; that the plaintiff was entirely ignorant of such sale until about May 13, 1872, when he learned of it by accident; that the property so sold was of the value of $25,000, and the sum of $200, bid as aforesaid, was grossly inadequate; that the plaintiff had received no part of the sum of $200, and he had taken steps at once, on hearing of the sale, to secure his rights; that the said Reed was now insolvent, and plaintiff would have no remedy unless the sale were set aside; that in December, 1871, he had sent an agent to Wood county to ascertain the situation of his claim against Reed, and the agent had reported that the plaintiff had nothing to do to collect his claim, except to issue execution on said judgment, and said agent was wholly ignorant that any execution had been issued or sale made. The affidavit of Henry Reed tended to show that he lived in Dubuque, Iowa, but that for some time previous to November 19, 1866, he had been engaged in the lumber business in Wood county, and was the owner of a saw mill and a large amount of pine lands in that county; that on that date *Clark* and *Scott* bought an undivided two-thirds inter-

est in such lands and saw mill, for the agreed price of $20,000; that at that time certain liens existed upon all of said property, being two mortgages for $9,172 and $1,500 respectively, and that *Clark* and *Scott* retained sufficient of said purchase money to satisfy said liens; that in fact they had been since paid, but had not been satisfied, and had been transferred to one R. A. Babbage for the purpose of keeping on the record an apparent incumbrance, when in fact none existed; that in August, 1867, the said partnership was dissolved by the sale of his interest to *Clark* and *Scott*; that it was agreed that said purchasers should pay him $5,000, and assume all the debts, including the plaintiff's judgment for $4,264.12; that previous to such sale and dissolution, the affiant, at the request of said *Scott*, went to Mr. Park, the attorney of the plaintiff, and got him to stay execution on the judgment, and paid him $30, or $50, for such stay; and that although the affiant was a neighbor of *Clark* and *Scott*, they had carefully kept from him the fact that an execution had been issued, or a sale made. The counter affidavits tended to show that the sale was conducted fairly and in good faith; that the return was not made promptly on the execution for the reason that the officer who made the sale was somewhat inexperienced, and he had requested Mr. Powers, an attorney, to make the return, and it had been postponed and neglected; that the lands sold were so heavily incumbered with mortgages and back taxes, that the price bid therefor was an adequate one; that by reason of the heavy incumbrances on said lands, and the insolvency of Reed, the claim of the plaintiff had been considered of little or no value; that, to collect costs and fees, an execution had been issued by Mr. Park, under which he intended to sell Reed's interest in several hundred acres of land, of little value, which had been found to be unincumbered except by the plaintiff's judgment; that by the neglect or misapprehension of the sheriff, the mill property had also been sold, though it could make practically but little difference, as the mill property was so heavily incumbered; that

Mr. Park had consented to a stay of execution only on the consideration and condition that Reed's attorney would not move to set the judgment aside, and for a trial (the judgment having been rendered on default); and that no money was paid at the time, except that $25 was paid as a retainer to aid Mr. Powers in other matters. Nearly all the statements in the affidavit of Reed were contradicted by the affidavits used in behalf of the appellants; and a large number of affidavits stated that the character of Reed, as to truth and veracity, was bad.

The court ordered, that on the plaintiff paying into court the amount of the bid paid by *Clark* and *Scott*, with interest, and the costs of the sale, said sale be vacated, and that plaintiff have leave to issue an *alias* execution, and thereon to make sale of said lands; and that at such sale the plaintiff be required to bid the same up to an amount sufficient to satisfy his judgment; that if the parties could not agree as to the amount to be paid into court as costs, the clerk should ascertain and report the same; and that within sixty days thereafter the same should be paid into court, and in default thereof the said order should fail and be of no effect.

From this order *Clark* and *Scott* appealed.

*Charles M. Webb* and *J. C. McKenney*, for appellants:

1. The failure of the plaintiff's attorney to indorse the execution, and of the sheriff to make the return, are mere irregularities which may be cured at any time with the approval or by the direction of the court. *Corwith v. State Bank*, 18 Wis., 565; *Close v. Gillespey*, 3 Johns., 525; *Sabin v. Austin*, 19 Wis., 422; *Mariner v. Coon*, 16 id., 468; Rorer on Sales, 227. The validity of the sale is in no way affected by the neglect to make the return. It is the *sale* that gives title. Rorer on Sales, 248. 2. The plaintiff wholly neglected his claim from May, 1867, to May, 1872; the appellants bought at public sale with no notice of what had passed between the plaintiff and his attorney; and they ought not to suffer for the plaintiff's neglect. *Duncan v. Dodd*, 2 Paige, 101; *Livingston v. Byrne*,

11 Johns., 565; *Farnham v. Colton*, Clarke, 35; *Haines v. Taylor*, 3 How. Pr., 206. 3. A sale will not be disturbed because of inadequacy of price merely. *Strong v. Catton*, 1 Wis., 471; *Hill v. Hoover*, 5 id., 375; 11 Johns., 555; 10 Paige, 487; 2 id., 101. But the testimony shows that there was no such inadequacy of price as is claimed. Affidavits of value, in cases like this, should be full and explicit, by disinterested witnesses who are acquainted with the premises. *Warren v. Foreman*, 19 Wis., 39.

*Finches, Lynde* and *Miller*, for respondent, cited the following authorities to show that this was a proper case in which to set aside the sale, and that the order should be affirmed: *Strong v. Catton*, 1 Wis., 471; *Downer v. Cross*, 2 id., 379; *Childress v. Hurt*, 2 Swan (Tenn.), 487; *Hays' Appeal*, 51 Pa. St., 58; *Wright v. Cantzon*, 31 Miss., 514; *Horton v. Horton*, 2 Bradford, 200; *Griffeth v. Hadley*, 10 Bosw., 587; *Bixley v. Mead*, 18 Wend., 611; *Ames v. Lockwood*, 13 How. Pr. R., 555; *Graff v. Jones*, 6 Wend., 524; *Mobile Cotton Press v. Moore*, 9 Porter (Ala.), 682; *McCaskey v. Graff*, 23 Pa. St., 321; *Cumming's Appeal*, id., 509; *Requa v. Rea*, 2 Paige, 340.

COLE, J. This is an appeal from an order setting aside a sale upon an execution. The motion to vacate the sale was made before the time for redemption had expired, by the execution creditor. The grounds of the motion were:

1st. That the execution was not indorsed by his attorney, and that the sheriff has indorsed no return thereon.

2d. That the plaintiff was not informed of the sale until long after it occurred, the sale having been made February 17, 1871, and the plaintiff discovering it for the first time, May 13, 1872.

3d. That the property sold on the execution was worth $25,000, and that the price bid was "grossly inadequate," and was a fraud upon his rights.

The amount of the plaintiff's judgment was $4,287.12, while

the property sold on the execution was bid in by the appellants for $200.

It is admitted that the execution was not indorsed or subscribed by the party issuing it, or by his attorney, and that the officer making the sale has made no return upon the execution of his doings by virtue of the writ. These were undoubtedly irregularities for which the sale might be vacated. Our statute, among other things, provides that the execution must be "*subscribed by the party issuing it, or his attorney*" (sec. 8, ch. 134, R. S.), and correct practice requires such an indorsement. It is argued that these irregularities in the execution are merely technical defects, not affecting the substantial validity of the sale, and were amendable by the court which had jurisdiction of the writ. It is sufficient to say, in answer to this argument, that no cross motion was made on the part of the purchasers to amend ; and when we consider some matters stated in the various affidavits used in support of as well as in resisting the motion to vacate the sale, we are not prepared to say the court erred in the exercise of its power by giving full weight to technical irregularities in the *fi. fa.* Some facts are given, which, if not inconsistent with the fairness of the sale, show at least that the ends of justice may be promoted by setting the sale aside. It is deemed unnecessary to dwell upon those facts at any length, and they will be only alluded to for the purpose of vindicating the correctness of the order of the court below.

It must be admitted that the judgment creditor was not consulted by his attorney in regard to the issuing of the execution, and knew nothing about the sale. He had, therefore, no opportunity to protect his rights by bidding upon the property or by giving any directions which would prevent a sacrifice of the property at the sale. It appears also that his attorney, Mr. Park, did not attend the sale. Indeed, he says that, in order to collect costs and fees, he caused an execution to be issued, and directed the sheriff to levy upon the interest of the judg-

Allen vs. Clark and another, impleaded.

ment debtor in what is called " stump land," having little val-
ue, and which had for several years been sold for taxes ; and
that, by neglect or misapprehension, the officer sold in a list
not only the stump land but the mill property." It is true,
Mr. Park states substantially that he did not consider the debt-
or's interest in the mill property of much value, owing to the
existence of a mortgage upon it prior to the judgment lien ;
but nevertheless he says that he did not think the sheriff would
offer the mill property for sale, and it was not intended that he
should do so. The property sold upon the execution was
worth at least $15,000 ; some persons whose affidavits were
used on the motion placing its value several thousand dollars
above that sum. There was a mortgage upon the mill prop-
erty of a large amount, which, if paid, was unsatisfied of rec-
ord. There is an irreconcilable conflict in the affidavits on the
question whether this mortgage has or has not in fact been
paid, in whole or in part, and as to who is entitled to the mon-
ey due upon it. We shall not go into any of these questions ;
for it is quite impossible, in view of the widely variant state-
ments of the witnesses upon the point, to determine what the
real facts are. It is enough to say that the matter is left in
great doubt, whether the mortgage is an existing lien, and
whether the mill property was not sacrificed at the execution
sale. The circuit court, doubtless, in deciding the motion, took
into consideration all these matters, and must have concluded
that weight should be given to even technical defects in the
execution and irregularities in the sale. And in view of all
the circumstances we are not prepared to say that the circuit
court did not exercise its power wisely, and that the ends of
justice will not be served by vacating the sale and setting aside
the execution. The terms imposed fully protect the rights of
the purchasers, or at all events are as favorable to them as the
law requires.

*By the Court.* — The order of the circuit court, setting aside
the execution and vacating the sale, is affirmed.