## RUSSELL, APPELLANT, v. PEW, RESPONDENT.

[Submitted April 2, 1892. Decided September 26, 1892.]

JUDICIAL SALES — *Setting aside — Judgments — Mortgages.* — It appeared from the complaint in an action to vacate a judicial sale, that the proceedings up to the time of the sale were regular, and that the sale occurred in the presence of plaintiff. It was alleged, however, that while the sale was taking place it was asserted that the sale was a mere formality, whereby plaintiff and others were induced to believe that the sale was not intended to be genuine; that it was rumored that plaintiff's title was imperfect, and that such rumor obtained credence, and by reason thereof the property sold for an inadequate price. Plaintiff did not allege from whom the assertions emanated, or that he made any inquiry as to their source, or attempted to refute them. It was also alleged

that prior to the expiration of the period for redemption, plaintiff applied to the sheriff for a list of his property theretofore sold, and which was subject to redemption, and received a list which omitted the land in question, and thereby plaintiff was further misled to believe that said sale was not genuine. It did not appear that plaintiff made inquiry as to the reason for such omission, or sought counsel concerning it. *Held,* that the complaint failed to state a cause of action.

*Appeal from First Judicial District, Lewis and Clarke County.*

Action to vacate judicial sale. Judgment was rendered for defendant on demurrer by Buck, J. Affirmed.

*Toole & Wallace,* for Appellant.

I. The first ground presented for setting aside the sale was inadequacy of consideration so gross as to shock the conscience. Many courts have declared that this alone would be sufficient to warrant a chancellor to set aside even an ordinary execution sale, and this on the theory that the object of such sales is to subject the property of the debtor at a fair valuation, to the liquidation of his debts. (*Swires* v. *Brotherline,* 41 Pa. St. 135; 80 Am. Dec. 601; *Teel* v. *Yancey,* 23 Gratt. 691; *Henderson* v. *Sublett,* 21 Ala. 630, 650; *Sinnett* v. *Cralle's Adm'r,* 4 W. Va. 600; *Byers* v. *Surget,* 19 How. 311; *Randolph's Ex'r* v. *Quidnick Co.* 125 U. S. 459.) Especially is this true of a sale under a decree, as distinguished from an ordinary execution sale. (*Hudgins* v. *Lanier,* 23 Gratt. 494; *Teel* v. *Yancey,* 23 Gratt. 691; *Sinnett* v. *Cralle's Adm'r,* 4 W. Va. 600.) It is distinctly averred that the price for which the lot was sold was but one-twentieth of its value. Whatever may be the conflict of decision upon the first proposition, the uniform rule of decision in this country is, that where the inadequacy of consideration is so gross as to shock the conscience, courts will look "anxiously for even purely technical irregularities upon which to set the sale aside." (*Wright* v. *Dick,* 116 Ind. 542, 544; Freeman on Executions, § 309; *Allen* v. *Clark,* 36 Wis. 107; *Graffam* v. *Burgess,* 117 U. S. 180; *Carden* v. *Lane,* 48 Ark. 216; 3 Am. St. Rep. 228; Rorer on Judicial Sales, §§ 1086, 1087, 1095; 12 Am. & Eng. Encycl. of Law, 238.)

II. That the failure to confirm this sale under decree of foreclosure was not only a technical, but a vital irregularity, can scarcely be controverted. The rule of the common law was

uniform that a judicial sale, i. e., one under order of court as distinguished from the ordinary execution sale, never became final until reported to the court, acted on, and confirmed. (Freeman on Execution, § 311; *Blossom* v. *Railroad Co.* 3 Wall. 207; 8 Am. & Eng. Encycl. of Law, p. 250; 12 Am. & Eng. Encycl. of Law, p. 219.) Save where repealed by statute, the common law of England prevails in Montana. Section 358, page 158 of the Compiled Statutes, does not assume, directly or indirectly, to modify this chancery rule of confirmation.

III.   The impression influencing the sale as to the defectiveness and invalidity of the Russell title, and the belief that the sale was not genuine, but merely formal, presents a clear case for the application of the rule announced in *Wright* v. *Dick*, 116 Ind. 542, in that they constitute "circumstances and facts operating to prevent the property from bringing its fair value."

IV.   The obtaining by the appellant of a list, said by the officer to be a complete list of all the property, together with the assertion at the time of sale relied upon by the appellant that it was but a mere formality, develops a clean-cut case of misapprehension on his part, resulting in an omission to redeem. (*Wright* v. *Dick, supra.*)

*T. J. Walsh*, for Respondent.

I.   Inadequacy of consideration alone, however gross, will not avail to set aside a judicial sale. (*O'Callaghan* v. *O'Callaghan,* 91 Ill. 228; *Agricultural etc. Assoc.* v. *Brewster*, 51 Tex. 257; *Sigerson* v. *Sigerson*, 71 Iowa, 476; *Peterson* v. *Little*, 74 Iowa, 223; *March* v. *Ludlum*, 3 Sand. Ch. 35; *Ætna L. Ins. Co.* v. *McCormick*, 20 Wis. 265; *Graffam* v. *Burgess*, 117 U. S. 180.) But the plaintiff is in no position to complain of the inadequacy of the price for which the property sold. He was present at the sale. It was his duty to deny the "rumors." He seeks the aid of the court now to put him in exactly the position he would have been if he had but then raised his voice. He knew the rumor disparaging his title was untrue, and the least inquiry would have set the others at rest, even though it did not carry its own refutation. It was his duty to do what he could to make the property bring what it was worth. (*McGeorge* v. *Sease*, 32 Kan. 387.) If the result sprang from his own inatten-

tion or negligence, even gross inadequacy will not avail. (*Fry* v. *Street*, 44 Ark. 502; *King* v. *Bronson*, 122 Mass. 122; *Bullard* v. *Green*, 10 Mich. 268.) It must be remembered that the purchaser in this instance is a stranger. No imputation of any character is even suggested in the complaint against him. It is not even intimated that he knew of the "rumors." He is a purchaser in good faith. In order to avoid the sale "it must be shown that the purchaser is in some measure responsible for the inadequacy of price." (*Carden* v. *Lane*, 48 Ark. 216; 3 Am. St. Rep. 228; *White* v. *Wilson*, 14 Ves. Jr. 151; *Adams* v. *Thomas*, 44 Ark. 267; *McCown's Ex'rs* v. *Foster*, 33 Tex. 241; *Files* v. *Harbison*, 29 Ark. 307.) Or that it is attributable to the person conducting the sale, so that it is against conscience that the purchaser should take advantage. (*Collier* v. *Whipple*, 13 Wend. 224; *Tripp* v. *Cook*, 26 Wend. 143–156; *Lefevre* v. *Laraway*, 22 Barb. 167–173.) The good faith of the purchaser and the sheriff is a controlling feature. (*Northrop* v. *Cooper*, 23 Kan. 432.)

II. As to lack of confirmation, it seems a sufficient answer to say that the statute does not require the sale to be confirmed. It directs the sheriff to issue his certificate and at the end of six months to execute a deed. No intervening action is contemplated on the part of the court. Confirming sales either on execution or foreclosure seems to be wholly unknown to the California practice, and it has been judicially determined that it is not essential in judicial sales unless required by the statute. (*Kimple* v. *Conway*, 75 Cal. 413. So also the law is declared in *Campbell* v. *Gardner*, 11 N. J. Eq. 423; 69 Am. Dec. 598.) The right of redemption is a substitute for it. (Herman on Executions, 285.) And the existence of this right almost supplants an action to set aside the sale. (*Ætna Ins. Co.* v. *McCormick, supra.*)

III. The sheriff was under no obligation to furnish plaintiff with a list of his property which was subject to redemption, and his failure so to do constitutes no excuse for failing to redeem. (*Keene etc. Bank* v. *Marsh*, 31 Kan. 771.) And plaintiff must, when he delays beyond the period allowed for redemption, give some sufficient excuse. (Freeman on Executions, 307 *a*.) Plaintiff had actual notice of the true state of affairs six months before the commencement of his action. No excuse for this delay is offered. (*Lyon* v. *Brunson*, 48 Mich. 194.)

HARWOOD, J. — The trial court sustained a demurrer interposed to plaintiff's complaint, on the ground that the same failed to allege facts sufficient to constitute a cause of action, and, plaintiff having elected to abide by the statement of his cause, as set forth in the complaint, judgment of dismissal was entered, from which this appeal is taken, and appellant here insists that the facts alleged are sufficient to constitute a cause of action.

The purpose of the action is to obtain a decree setting aside and vacating a judicial sale of certain interests of plaintiff in real estate, described as situate in the city of Helena, county of Lewis and Clarke, made in pursuance of a decree foreclosing a mortgage upon said real estate, in an action against appellant. The complaint in this action alleges plaintiff's former ownership of the real estate in question; the fact that such proceedings were had in an action in the District Court of the First Judicial District of this State, in and for said county, as resulted in a decree of foreclosure of the mortgage existing on said real estate; that thereafter an order of sale was issued out of court, to carry said decree into effect, by sale of the premises in question, which sale was made thereunder April 22, 1890; that said premises "were, and yet are, of the value of upwards of two thousand five hundred dollars;" that at the time and place of said sale, when the property was called for sale by the sheriff of said county, "it was asserted and declared that said sale was a mere formality, to the end that the judgment creditors might take other steps and proceedings; and that there was thereby induced a belief, then existing in this plaintiff, and others present at this sale, and then and there generally prevalent, that the same was not intended to be, and was not, a genuine sale of the said property; and it was further then and there rumored, how and for what reason plaintiff does not know, and the said rumor obtained credence, that the title of the said Russell to the said premises was defective, imperfect, and invalid; and by reason of the foregoing, though the said property was afterwards cried for sale, the highest bid that could be obtained therefor was the sum of one hundred and seventy-five dollars, bid therefor by one George H. Pew, defendant herein; which said sum so bid was, and yet is,

so grossly inadequate to the value of the property bid upon as to render the said sale invalid on account thereof, said sum so bid being about only one-twentieth part of the real value of said premises; that in truth and in fact said sale was intended to be a genuine sale of said property, and was so; and, in truth and in fact, the title of the said Russell in and to said premises, and every part thereof, was valid and perfect, and that, therefore, there was an absolute mistake in both respects at the time of said sale."

"And plaintiff, on his information and belief, further alleges that had it not been for the rumors aforesaid, circulated and believed in, and if it had been understood at said sale that the same was to be a genuine sale of said property, and that the title of the said Russell was not imperfect, the property would have sold at somewhere near its actual value; and that it was by reason of the foregoing condition of affairs that the bidding was so dispirited, and the bidders were rendered fearful to bid upon the same, and that on account thereof, and that alone, the said defendant was enabled to purchase the said property at the price aforesaid."

It is further alleged that, after the expiration of six months from the time of said sale—that being the period within which the judgment debtor is allowed by law to redeem the same from sale—said sheriff made and delivered to defendant a deed of conveyance of said premises, for said consideration of one hundred and seventy-five dollars; that after the sale said sheriff returned into court the order of sale, "with his return indorsed thereon, showing the sale aforesaid, but that said sale has never been confirmed by said court, nor have either of said creditors or the defendant ever applied to said court to have the same confirmed, nor has the said court ever taken, or been asked to take, any action whatever with reference thereto."

That "this plaintiff would have sooner and earlier instituted proceedings looking towards a vacation and setting aside of the said sale, but that he was misled by the statements made at the time of the said sale, and did not regard the same as a *bona fide* sale;" and was further misled by the fact "that, more than thirty days prior to the expiration of the period of redemption upon any and all of his property—other tracts and pieces

thereof having been theretofore sold under other judgments and decrees — this plaintiff went up to the office of the said C. M. Jefferis, sheriff of the county of Lewis and Clarke, and demanded and requested of said sheriff a list of all property sold by the said sheriff prior to that date, which it was necessary that this plaintiff should redeem; and thereupon the said sheriff did furnish to this plaintiff a certain list, but wholly failed to mention in the said list the premises aforesaid, in any manner or at all; which further induced this plaintiff to believe, and confirmed him in the belief, that the said sale was merely formal, and not genuine, and that on account thereof it mattered not what had been bid upon the said premises; and that plaintiff was not advised that defendant claimed to be the actual owner of said premises until on or about the 20th of December, 1890, more than sixty days after the period had expired for the redemption of the said premises;" that plaintiff was unskilled in business affairs, and theretofore had no experience in judicial sales.

Plaintiff offers to pay into court any sum required by the order of court, upon rescission of said sale.

A careful consideration of all the facts alleged in this complaint leads us to the conclusion that the trial court ruled correctly in sustaining the demurrer thereto.

So far as appears from the allegations of the complaint, every step in the course of said proceedings up to the time of the sale was pursued with regularity, upon due notice, and the sale occurred in the presence of plaintiff. Now, it is alleged that, at the time when the sale was taking place, "it was asserted and declared that said sale was a mere formality, to the end that the judgment creditors might take other steps and proceedings;" and that plaintiff and others were induced thereby to believe that said sale was not, nor intended to be, genuine; and that it was rumored, by what means and for what reason plaintiff does not know, that the title of plaintiff to said premises was imperfect and invalid, and that said rumor obtained credence.

From whom did these assertions emanate? Did they proceed from any one whose relation to the proceedings would lend force to such assertions? These alleged assertions may have been

made by some one, such as the sheriff, or the judgment creditor, or his attorney, whose statements would be likely to influence the minds of those present, or they may have been made by some one whose assertions should have commanded no attention from those seeking to bid on said property or from the judgment debtor; or if the latter gave attention to them, coming from such an unauthorized source, it seems that he should have demanded from the parties authorized to make said sale, and to speak in the matter, a definite declaration, refuting such assertions, if unfounded. Were such alleged assertions publicly made, or made quietly and to but few persons attending the sale? In the brief of appellant's counsel, he affirms that "it was publicly declared," etc. Herein he states a stronger case in his brief than we find in the complaint. The allegations of the complaint furnish no answer to the above inquiries. The courts, as shown by the authorities (*Graffam* v. *Burgess*, 117 U. S. 180; *Byers* v. *Surget*, 19 How. 303; *Allen* v. *Clark*, 36 Wis. 101; *Wright* v. *Dick*, 116 Ind. 538; *Henderson* v. *Sublett*, 21 Ala. 626; *Lankford* v. *Jackson*, 21 Ala. 650; *Swires* v. *Brotherline*, 41 Pa. St. 135; 80 Am. Dec. 601; *Teel* v. *Yancey*, 23 Gratt. 691), are liberal in dealing with questions concerning judicial sales, and in setting the same aside on proper showing, to the end that there may be a fair sale, under as favorable circumstances, and for as great a price for the thing sold, as can be obtained; but such sales ought not to be vitiated and undermined by the merest intimation or "assertion" coming from parties who may be intruders, and not authorized to speak in reference to the proceeding, or the matters involved therein, and whose assertions ought not to command the attention or influence the action of those seriously contemplating the purchase of property at such a sale. The assertions which this complaint allege may have come from such a source, and been unworthy of serious consideration, and still the allegations of the complaint would be true.

This property had been mortgaged by plaintiff to secure payment of a debt; default of payment had been made; an action of foreclosure of the mortgage — in which it is to be presumed plaintiff was summoned — had been prosecuted to judgment; and this sale, in pursuance to such decree and writ, had taken

place in the presence of plaintiff, and, so far as appears, was carried on with all the formalities required by law in such proceedings, and the property was struck off to the highest bidder, at public auction; yet plaintiff, in the face of all these facts, contents himself to trust to rumor, and to the assertion of some one — so far as appears, some officious intermeddler — that said sale "was a mere formality." What did that mean? Did it mean that the mortgage to secure payment of an obligation, the foreclosure suit, the decree of court, the writ to carry the same into effect, advertisement, public sale, and the formal striking of the property off, as sold to the highest bidder, were mere vain proceedings, without effect? that "the sale was not genuine," and left the property in the name of plaintiff, just as before, and he had nothing to do with respect to the matter, because some one had said that the sale was "a mere formality?" This was the conclusion which plaintiff asserts he adopted from that assertion, and adopted it without inquiry, so easy to have been made, as to the real effect of these proceedings. If the effect of a sale regularly made is to be destroyed by such conditions, it would seem that none, however lawfully and fairly proceeded with, would be safe from overthrow.

Plaintiff alleges that, at a certain time prior to the expiration of the period for redemption of said property, he applied to the sheriff for a list of his real estate theretofore sold, subject to redemption; that the sheriff gave such list to plaintiff, omitting therefrom the property in question in this case; that thereby plaintiff was further misled to believe said sale was not genuine.

Plaintiff was present at the sale, and had personal knowledge of the fact that the sale of said premises took place, the price bid, the name of the purchaser, and all facts concerning the same, of which the sheriff could have informed him. He is also presumed to have known, and it is implied from the allegations of the complaint that he did know, of his privilege to redeem said property from said sale, at the same price for which it sold, at any time within six months. And now, when, as intimated in the above allegation, he proposed to exercise said privilege, he puts a certain construction upon the failure of the sheriff to give him a list of the real estate in question. He does not even ask the sheriff why he omitted said property from

the list, nor what was the effect of the sale thereof. Nor does he seek counsel concerning it. The rights of others had intervened, and it would be contrary to sound principles to hold that those rights were prejudiced by failure of the sheriff to act with precision in a matter which did not pertain to his official duty in the premises, and in a matter where the judgment debtor already had all information which the sheriff could have furnished. The statute requires the sheriff, in such proceedings, to cause to be recorded, in the public recorder's office, one duplicate certificate of sale, and therein state whether the land sold was subject to redemption (Code Civ. Proc. § 340); and we must presume, in the absence of allegation to the contrary, this was done. If the property was sold at a price which represented but a small proportion of the real value of the property, as alleged, it made redemption thereof the more easy for plaintiff, and the law and practice of the court allowed him six months in which to exercise that privilege.

The cases cited by appellant are not in point, for, while inadequacy of price appears to be the controlling ground for vacating the sale, it does not appear that the judgment debtor had full knowledge of all the proceedings, as in the case at bar, and, with such knowledge, utter failure to cure all the ills of which he complains, by acting on the privilege of redemption, given by law, and the practice of the court. (See cases *supra*.) It will generally be found in those cases that the judgment debtor was in fact without knowledge of the sale, until after the time for redemption had expired; and in many of them the facts tend to show that the purchaser, and others concerned, connived to keep all such knowledge from the judgment debtor, until after the redemption period had expired. We approved the principles laid down in those and kindred cases on the subject. But we do not find that plaintiff's cause, as set forth in the complaint, comes within the conditions upon which those authorities proceeded.

This is a case wherein it seems to us the maxim, *vigilantibus non dormientibus æquitas subvenit*, is applicable to the inexcusable laches of plaintiff, so far as shown by his complaint.

It is further alleged by plaintiff that no order has yet been made by the court confirming said sale. We are of the opinion

that this would be an immaterial fact in the case, so far as concerns plaintiff's position, because, if the sale was grossly irregular, so as to make it voidable upon a proper showing thereof, the fact of confirmation would not cure such irregularities; nor would the absence of confirmation, if the same was necessary under our practice — a question which we do not feel called upon to determine in the present case (Rorer on Judicial Sales, §§ 19, 20) — amount to such an irregularity as to avoid all the other proceedings leading up to and including the sale, if without fault.

The trial court, we think, ruled correctly, and the order sustaining the demurrer will therefore be affirmed.

*Affirmed.*

BLAKE, C. J., and DE WITT, J., concur.